IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
VALDOSTA DIVISION

| | |
|---|---|
| GEORGE PETER PATTON, | : |
| Plaintiff, | : |
| VS. | : |
| | : 7:10-CV-135 (HL) |
| MICHAEL J. ASTRUE, | : |
| Commissioner of Social Security, | : |
| Defendant. | : |

## RECOMMENDATION

Plaintiff herein filed this Social Security appeal on November 22, 2010, challenging the Commissioner's final decision denying his application for disability benefits, finding him not disabled within the meaning of the Social Security Act and Regulations. (Doc. 1). All administrative remedies have been exhausted.

## LEGAL STANDARDS

In reviewing the final decision of the Commissioner, this Court must evaluate both whether the Commissioner's decision is supported by substantial evidence and whether the Commissioner applied the correct legal standards to the evidence. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983); *Hoffman v. Astrue*, 259 Fed. Appx. 213, 216 (11th Cir. 2007). The Commissioner's factual findings are deemed conclusive if supported by substantial evidence, defined as more than a scintilla, such that a reasonable person would accept the evidence as adequate to support the conclusion at issue. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).

In reviewing the ALJ's decision for support by substantial evidence, this Court may not

reweigh the evidence or substitute its judgment for that of the Commissioner. "Even if we find that the evidence preponderates against the [Commissioner's] decision, we must affirm if the decision is supported by substantial evidence." *Bloodsworth*, 703 F.2d at 1239. "In contrast, the [Commissioner's] conclusions of law are not presumed valid. . . . The [Commissioner's] failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal." *Cornelius*, 936 F.2d at 1145-1146.

Under the regulations, the Commissioner evaluates a disability claim by means of a five-step sequential evaluation process. 20 C.F.R. § 404.1520. In Step One, the Commissioner determines whether the claimant is working. In Step Two, the Commissioner determines whether a claimant suffers from a severe impairment which significantly limits his ability to carry out basic work activities. At Step Three, the Commissioner evaluates whether the claimant's impairment(s) meet or equal a listed impairment in Appendix 1 of Part 404 of the regulations. At Step Four, the Commissioner determines whether the claimant's residual functional capacity will allow a return to past relevant work. Finally, at Step Five, the Commissioner determines whether the claimant's residual functional capacity, age, education, and work experience allow an adjustment to other work.

*Administrative Proceedings*

Plaintiff filed an application for disability insurance benefits on April 17, 2008. (Tr. 39). His claim was denied initially and upon reconsideration. (Tr. 41-44, 46-49). A video hearing was held before an Administrative Law Judge ("ALJ") who presided from Savannah, Georgia on October 6, 2009. (Tr. 9, 57). Thereafter, in a hearing decision dated February 9, 2010, the ALJ determined that Plaintiff was not disabled. (Tr. 9-18). The Appeals Council subsequently denied review and

the ALJ's decision thereby became the final decision of the Commissioner.   (Tr. 1-3).

*Statement of Facts and Evidence*

The Plaintiff was thirty-seven (37) years of age at the time of the hearing before the ALJ, and alleged disability since March 1, 2008, due to problems with both knees, and his elbow. (Tr. 31, 84, 112).   At the hearing before the ALJ, Plaintiff also stated that he cannot work because he has numbness in his feet, a stiff neck, numbness in his hands, deterioration of his right chest, his left triceps is disappearing, and he has a tear in his shoulder.   (Tr. 31-32).   Plaintiff has a two-year college degree, and past relevant work experience as a fork lift operator, welder, maintenance worker, stocker, laborer, and warehouse worker.   (Tr. 17, 31).

As determined by the ALJ, Plaintiff suffers from the following impairments: "mild degenerative joint disease of bilateral knees, and a herniated disc of the cervical spine with radiculopathy and right shoulder bursitis and tendinitis[.]"   (Tr. 11).   The ALJ found that Plaintiff did not have an impairment or combination thereof that met or medically equaled a listed impairment, and he remained capable of performing a full range of sedentary work.   Although Plaintiff could not return to his past relevant work, the ALJ considered the Plaintiff's age, education, work experience, and residual functional capacity, and applied the Medical-Vocational Guidelines to determine that Plaintiff remained capable of performing other jobs that existed in significant numbers in the national economy, and thus was not disabled. (Tr. 17-18).

## DISCUSSION

Plaintiff alleges that the ALJ erred by using the Grids rather than calling a Vocational Expert ("VE") to testify, by finding that Plaintiff did not meet Listing 1.04A, by failing to evaluate Plaintiff's obesity, by failing to give proper weight to Plaintiff's treating physician, and by failing to

3

properly consider Plaintiff's credibility. (Doc. 9).

*Grids*

Plaintiff maintains that the ALJ erred in his determination of Plaintiff's residual functional capacity ("RFC") because he relied on the grids, and did not obtain the testimony of a Vocational Expert ("VE"). (Doc. 9).

After determining that a plaintiff can no longer return to his past relevant work, the burden shifts to the Commissioner to prove that other jobs exist in the national economy that the plaintiff is able to perform. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999). The Medical Vocational Guidelines ("the grids") may be used in place of VE testimony to determine the existence of jobs in the national economy that Plaintiff is capable of performing "if none of the [Plaintiff's] nonexertional impairments are so severe as to prevent a full range of employment at the designated [work] level." *Passopulos v. Sullivan*, 976 F.2d 642, 648 (11th Cir. 1992). However, if there are significant nonexertional impairments, exclusive reliance on the grids is generally inappropriate. *Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995).

Herein, Plaintiff maintains that the ALJ failed to properly consider his nonexertional manipulative limitations. (Doc. 9). The ALJ determined that Plaintiff could perform a full range of sedentary work. (Tr. 13). Sedentary work is defined by the Social Security Administration as work that involves

> lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 404.1567(a). Further, "most unskilled sedentary jobs require good use of both hands

and the fingers[.]"  SSR 98-9p.  "Any *significant* manipulative limitation of an individual's ability to handle and work with small objects with both hands will result in a significant erosion of the unskilled sedentary occupational base."  *Id.* (emphasis in original).  However, the "ability to feel the size, shape, temperature, or texture of an object by the fingertips" would not, by itself, erode the occupational base.  *Id.*

The objective medical evidence indicates that Plaintiff has a "herniated disc of cervical spine with radiculopathy and right shoulder bursitis and tendinitis."  (Tr. 470).  When Plaintiff was examined in July of 2009, he had absent to trace reflexes of the triceps, biceps, and brachial radialis, and the intrinsic muscles of the fingers on his right hand seemed slightly weak in comparison to his left hand.  (Tr. 408, 411).  However, his hand grip strength was a 5/5, and his wrist extensors and flexors tested at a 5/5.  (Tr. 408).  There was also "no muscle weakness noted on wrist dorsi-flexion, or extension/flexion of [the] arm, or [on] abduction."  (Tr. 411).

Dr. Thomas Carstens, one of Plaintiff's treating physicians, noted that Plaintiff had mild carpal tunnel syndrome, but did not note that this caused any limitations.  (Tr. 470).  An examination of Plaintiff showed atrophy of Plaintiff's right deltoid, and Plaintiff had pain with impingement sign.  (Tr. 470).  However, Plaintiff's strength was good.  (Tr. 470).  Dr. Carstens also found that Plaintiff had a full range of motion, and no obvious weakness.  (Tr. 472).

Additionally, Plaintiff's daily activities do not indicate that Plaintiff has manipulative limitations.  Plaintiff testified at the ALJ hearing that on a normal day he makes breakfast, takes a shower, and gets dressed.  (Tr. 35).  Plaintiff takes care of his toddler son during the day, including making his son lunch and a snack, and getting him the things he needs.  (Tr. 35).  In his Function Report –Adult, Plaintiff stated that on a daily basis he takes care of his 5 month old son, feeding him

and changing his diapers. (Tr. 180). Plaintiff also plays board games with his daughter when she gets home from school. (Tr. 180). Plaintiff prepares meals two times a week, and stated that there has been no change in his cooking habits since his condition began. (Tr. 182). Furthermore, Plaintiff does not allege that his condition or injury affects his reaching or his use of his hands. (Tr. 185).

The ALJ discussed Plaintiff's medical evidence and Plaintiff's testimony. Plaintiff's medical evidence does not indicate any significant limitation in Plaintiff's ability to use his hands that would preclude him from a full range of sedentary work. Moreover, Plaintiff's daily activities do not show that Plaintiff has a significant limitation that prevents him from handling and working with small objects with both hands. As there is substantial evidence to support the ALJ's determination that Plaintiff can perform a full range of sedentary work, he did not err when he relied on the grids.

*Listing 1.04A*

Plaintiff states that the ALJ erred when he determined that Plaintiff's impairments did not meet or equal Listing 1.04A. In order to establish that his impairments meet or equal one or more of those set out in the List of Impairments (Appendix 1, 20 C.F.R. Part 404), a claimant must present specific medical findings that meet the tests for the applicable impairment or medical evidence that demonstrates how the impairment is equivalent to the listings. *Bell v. Bowen*, 796 F.2d 1350, 1353 (11th Cir. 1986) (plaintiff must "present specific medical findings that meet the various tests listed under the description of the applicable impairment or, if in the alternative he contends that he has an impairment which is equal to one of the listed impairments, the claimant must present medical evidence which describes how the impairment has such an equivalency"); *Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987). If Plaintiff meets the requirements for one of the Listings, he is

presumed to be disabled.  *Crayton v. Callahan*, 120 F.3d 2117, 1219 (11th Cir. 1997).

Listing 1.04A governs musculoskeletal disorders and requires that a claimant present evidence of a disorder of the spine resulting in compromise of a nerve root or the spinal cord, along with evidence of nerve root compression. The evidence of the nerve root compression must be

> characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine)[.]

20 C.F.R. pt. 404, Subpt. P, app. 1, § 1.04A.

Herein, Plaintiff's treating sources examined Plaintiff's back and shoulder, ordering MRI scans and x-rays.  In July of 2009, an MRI showed that Plaintiff had a right paracentral disc protrusion at C6-C7 that was "likely resulting in compromise of the right C8 nerve root."  (Tr. 409). There was no diagnosis of a nerve root compression.  A needle EMG test on August 31, 2009, indicated that Plaintiff had right-sided radiculopathy.  (Tr. 443).  On January 4, 2010, x-rays showed "some degenerative cervical disc disease at C5-C6" and "[s]ome C6-C7 minor degenerative changes[.]"  (Tr. 486).  Plaintiff was diagnosed with right C6-C7 disc herniation. (Tr. 487).

In July of 2009, Plaintiff's hand strength and his wrist extensors and flexors tested at a 5/5. (Tr. 408).  Plaintiff did have a very slow, limited range of motion.  (Tr. 413).  MRI results from August of 2009 showed that Plaintiff's cuff muscles were not retracted or atrophied; however, the anterior labrum was irregular.  (Tr. 440).  There was "[n]o evidence of complete rotator cuff tendon tear, but there [was] at least some mild degeneration and inflammation of the supraspinatus tendon, and partial tear [was] quite probable."  (Tr. 440).  Dr. Carstens examined Plaintiff in August of 2009 and found Plaintiff had a full range of motion and no obvious weakness.  (Tr. 472).  Dr.

Carstens did note that Plaintiff has some atrophy of his right pectoral area in comparison to the left. (Tr. 472).

Plaintiff's shoulder was x-rayed due to complaints of pain in March of 2010. (Tr. 485). The x-rays indicated the AC joint had degenerative joint disease. (Tr. 485). Plaintiff's internal and external rotation was totally normal with his arm at the side; Plaintiff did have pain on flexing above 90 degrees and during abduction at 60 degrees. (Tr. 485). Plaintiff's AC joint was numbed, which gave Plaintiff 100% relief, and Plaintiff was able to carry out his full range of motion. (Tr. 485). There was muscle wasting on his right pectoral and triceps. (Tr. 485).

The medical evidence does not definitively diagnose Plaintiff with a disorder of the spine that has resulted in compromise of a nerve root. At most, the objective medical tests have shown that Plaintiff "likely" has a compromised nerve root as a result of a disc herniation. (Tr. 409). Thus, Plaintiff has failed to show that his impairments meet Listing 1.04 because the radiology report failed to provide definitive evidence of disorder of the spine resulting in a compromised nerve root. *See Rouse v. Astrue*, 2010 WL 457320, *5 (M.D. Fla. Feb. 4, 2010) (finding the plaintiff did not meet Listing 1.04A when the radiologist provided an equivocal statement that he could not "exclude resultant nerve root compression").

Even if there was evidence of a compromised nerve root, Plaintiff must also demonstrate limited range of motion of the spine and motor loss accompanied by sensory or reflex loss. As seen above, the medical evidence shows that in July of 2009 Plaintiff had a limited range of motion. (Tr. 413). However, one month later, Plaintiff had a full range of motion and no obvious weakness. (Tr. 472). Plaintiff had a full range of motion throughout 2010. Furthermore, the evidence appears to document that Plaintiff's limitations in his range of motion are from a shoulder injury; the

evidence does not indicate Plaintiff had a limited range of motion in his spine. Accordingly, the ALJ's finding that Plaintiff's conditions did not meet or equal Listing 1.04A was supported by substantial evidence, and thus, was proper.

*Obesity*

Plaintiff alleges that the ALJ failed to consider the effects of Plaintiff's obesity, singly or in combination, with Plaintiff's knee impairments. (Doc. 9). Plaintiff relies solely on the treatment notes of Dr. Robert Jones, an orthopedic surgeon, which note that Plaintiff's left knee pain is aggravated by obesity. (Tr. 386). Plaintiff states that the ALJ has the "duty to enter 'specific and well-articulated findings' about the effects of all impairments, singly and in combination," including the effects of Plaintiff's obesity. (Doc. 9).

Initially, to the extent that Plaintiff is alleging that the ALJ did not adequately discuss Plaintiff's obesity, this argument must fail. An ALJ does not err when he fails to reference obesity when it has not been alleged by the plaintiff. *See James v. Barnhart*, 177 Fed. Appx. 875, 878 n. 2 (11th Cir. 2006) (finding that the ALJ did not err in failing to find obesity to be a severe impairment where the plaintiff did not complain of obesity during her testimony); *Godbee v. Astrue*, 2010 WL 2892725, *5 (S.D. Ga. June 30, 2010) (finding no error when the ALJ did not reference obesity when the plaintiff did not raise obesity as an impairment and did not identify any evidence demonstrating limitations were warranted because of the obesity).

Plaintiff does not allege that he is disabled due to his obesity in his application for disability benefits; rather, he stated that he was unable to work because of problems with both knees, and his elbow. (Tr. 112). Also, when questioned by the ALJ about his medical conditions at his hearing, Plaintiff stated that he could not work due to numbness in his feet, a stiff neck, numbness in his

hands, deterioration of his right chest, his left triceps disappearing, and due to a tear in his shoulder. (Tr. 31-32). To the extent that Plaintiff is alleging the ALJ did not properly discuss Plaintiff's obesity, the ALJ did not err because Plaintiff did not allege that his obesity caused an impairment.

Plaintiff also alleges that the ALJ failed to evaluate Plaintiff's obesity as it affects Plaintiff's knee injury. (Doc. 9). "When a claimant alleges several impairments, the ALJ has a duty to consider the impairments in combination and determine whether the combined impairments render Plaintiff disabled." *Sneed v. Barnhart*, 214 Fed. Appx. 883, 887 (11th Cir. 2006) (citing *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991)). The ALJ can satisfy his duty to consider all of the impairments in combination by "stating that he considered whether the claimant suffered from any impairment or combination of impairments." *Id.*; *see also Wilson v. Barnhart*, 284 F.3d 1219, 1224-25 (11th Cir. 2002) (finding that the ALJ's decision stating that the plaintiff did not have an impairment or combination of impairments that met a listed impairment constituted evidence that the ALJ considered the plaintiff's impairments); *Warren v. Astrue*, 2010 WL 3294186,*6 (N.D. Ga. July 14, 2010) ("the Eleventh Circuit has also held that the statement by the ALJ that she considered the impairments in combination is sufficient to show that the ALJ considered the combined effect of [the plaintiff's] impairments"); *Fashaw v. Astrue*, 2011 WL 1237578, *9 (M.D. Fla. Feb. 15, 2011) ("The Eleventh Circuit has made clear that an ALJ's statements and findings may show a plaintiff's impairments have been considered in combination").

The ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1[.]" (Tr. 13). The ALJ stated that he determined Plaintiff's RFC "[a]fter careful consideration of the entire record," and when determining the RFC, the ALJ "considered all symptoms and the extent to which these symptoms [could] reasonably be accepted as consistent with

the objective medical evidence and other evidence[.]" (Tr. 13).   Moreover, the ALJ referenced Dr. Jones's opinion that Plaintiff's left knee pain was aggravated by obesity. (Tr. 12).   Thus, the decision by the ALJ provides evidence that he properly considered any limitations that the obesity may have caused to Plaintiff's knee injury when determining the RFC.

The ALJ's assessment of Plaintiff's RFC must be based on all relevant evidence.   20 C.F.R. § 404.1545.   The ALJ's decision provides evidence that shows the ALJ considered Plaintiff's obesity when assessing Plaintiff's RFC.   Accordingly, the ALJ did not err in his determination of Plaintiff's RFC.

*Treating Physician*

Plaintiff alleges that the ALJ failed to give proper weight to the opinion of Dr. Timothy Thomson, Plaintiff's treating physician, when determining Plaintiff's RFC.   (Doc. 9).   When deciding the evidence, "[t]he testimony of the treating physician must ordinarily be given substantial or considerable weight unless good cause is shown to the contrary."   *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986).   The Commissioner's regulations also state that more weight should be given to opinions from treating sources because they can provide a detailed look at the claimant's impairments.   20 C.F.R. § 404.1527(d)(2).   "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997).   "Good cause" as to why the Commissioner did not rely on the treating source's opinion can exist when the physician's opinion was not supported by the record evidence, the evidence supported a contradictory finding, or the physician's opinion was conclusory or inconsistent with the physician's own medical records.   *Id.*

Herein, the ALJ did not give significant weight to Jami Stephenson (hereinafter "Stephenson"), an occupational therapist.   (Tr. 16-17).   Plaintiff alleges that Dr. Thomson reviewed the limitations

11

by Stephenson and agreed with them; thus, the ALJ erred by not giving controlling weight to Dr. Thomson's agreement with Plaintiff's limitations. (Doc. 9). Stephenson completed a questionnaire, and opined that Plaintiff could occasionally lift or carry 20 pounds, and could frequently lift or carry 20 pounds with his left arm and 10 pounds with his right. (Tr. 475). Plaintiff could walk at least 2 hours in an eight hour day, and must periodically alternate between sitting and standing to relieve discomfort. (Tr. 475-76). Stephenson found Plaintiff to be limited in pushing and pulling, and found Plaintiff could occasionally balance on level terrain, crouch, stoop, and climb ramps and stairs, but could never climb ladders, ropes, or scaffolds, balance on narrow surfaces, kneel, or crawl. (Tr. 476). Plaintiff would also need to rest, recline, or lie down several times a day, and was limited in his manipulative functioning in his right hand. (Tr. 476-77).

Social Security Ruling 06-3p establishes that "only 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight." SSR 06-3p. "Acceptable medical sources" are defined in the regulations as licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists. 20 C.F.R. § 416.913(a). Nurse practitioners and occupational therapists are defined as "other sources". 20 C.F.R. § 416.913(d)(1); 20 C.F.R. § 404.1513(d); *Petteway v. Astrue*, 2009 WL 890283, *10 (M.D. Fla. March 31, 2009) (occupational therapists). "[W]hile the ALJ is certainly free to consider the opinions of these 'other sources' in making his overall assessment of a claimant's impairments and residual abilities, those opinions do not demand the same deference as those of a treating physician." *Genier v. Astrue*, 298 Fed. Appx. 105, 108 (2nd Cir. 2008). Herein, Stephenson, an occupational therapist, completed the questionnaire. (Tr. 475-78) Thus, the ALJ is not required to give significant weight to the opinion.

Additionally, Plaintiff states that because Dr. Thomson submitted a questionnaire that stated

Plaintiff's impairments could reasonably be expected to result in the limitations identified by Stephenson, the ALJ must give this opinion significant weight. (Doc. 9). Initially, Dr. Thomson states that functional capacity evaluations are outside the scope of his medical practice. (Tr. 474). While Dr. Thomson acknowledges that Plaintiff's impairments could reasonably be expected to result in the identified limitations, he states that he only saw Plaintiff for pain and weakness in Plaintiff's arm, and "not for his knees or any other disorders[.]" (Tr. 480) (emphasis in original). "The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments." *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986). Dr. Thomson simply made a conclusory statement that he agreed with the assessed limitations but did not provide evidence to support this conclusion.

  Dr. Thomson's agreement with Stephenson is not supported by Dr. Thomson's treatment notes. On July 10, 2009, Dr. Thomson stated that Plaintiff had a very slow, limited range of motion, but his strength was 5/5. (Tr. 413). An x-ray that was taken produced normal results. (Tr. 414). On July 28, 2009, Dr. Thomson's examinations of Plaintiff revealed that Plaintiff's hand strength was a 5/5, his wrist extensors and flexors were a 5/5, but Plaintiff's intrinsic muscles of the fingers seemed slightly weak on the right side, when compared to the left. (Tr. 408).

  Dr. Thomson did not indicate that Plaintiff's arm caused limitations that resulted in a disabling impairment. In fact, Dr. Thomson stated he could not assess Plaintiff's residual functional capacity. The objective medical tests taken by Dr. Thomson and Dr. Thomson's treating notes do not support Dr. Thomson's opinion that Stephenson's assessment of Plaintiff's arm impairments is accurate. As the decision not to rely on Dr. Thomson's questionnaire regarding Stephenson's opinion is supported by substantial evidence, the ALJ did not err in his determination of Plaintiff's

RFC.

*Plaintiff's Credibility*

Plaintiff alleges that the ALJ's reasoning for discrediting Plaintiff's credibility was not based on substantial evidence. (Doc. 9).  If the Commissioner "finds evidence of an underlying medical condition, and either (1) objective medical evidence to confirm the severity of the alleged pain arising from that condition, or (2) that the objectively determined medical condition is of a severity which can reasonably be expected to give rise to the alleged pain," then he must consider the claimant's subjective testimony of the symptoms.  *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992).

To determine if Plaintiff's statements of an alleged symptom are credible, the ALJ must consider the intensity, persistence, and limiting effect of the symptoms, using Plaintiff's testimony, including activities of daily living, and objective medical records as evidence.  20 C.F.R. § 404.1529(c).  The ALJ must consider the record as a whole, including objective medical evidence, the individual's own statements about the symptoms, statements and other information provided by treating or examining physicians, psychologists, or other individuals, and any other relevant information.  SSR 96-7p.

Herein, after discussing Plaintiff's testimony and subjective complaints, the ALJ determined that:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms **are not credible to the extent they are inconsistent with the above residual functional capacity assessment**[.]

(Tr. 14) (emphasis in original).  The ALJ detailed the symptoms Plaintiff testified to having and the

symptoms reflected in the record, but found that Plaintiff's physical impairments did not prevent him from performing a full range of sedentary work. (Tr. 14-16).

The objective medical evidence indicates that Plaintiff's disc herniation and shoulder injury caused limitations. However, as explained above, Plaintiff's doctors reported good strength and a full range of motion. The medical records support the finding that Plaintiff is capable of a full range of sedentary work, and therefore, discredit Plaintiff's complaints of disabling pain.

The ALJ also found that Plaintiff's daily activities discredit his complaints of disabling pain. (Tr. 14-16). Specifically, the record shows that Plaintiff is capable of acting as the primary caregiver for his infant son. Plaintiff admits that he feeds his son, changes his diapers, and gets him things when he needs them. (Tr. 35, 180). Plaintiff also stated that his condition has not affected his ability to dress himself, bathe, care for his hair, shave, or feed himself. (Tr. 181). Plaintiff's wife also stated that Plaintiff takes care of their infant son while she is at work; Plaintiff spends time with his preschool aged daughter, and helps with the housework that "doesn't require lots of movement or lifting." (Tr. 172). The ALJ also found that Plaintiff's daily medication for pain, 800 mg of Ibuprofen, did not indicate disabling pain. (Tr. 15).

"[C]rediblity determinations are the province of the ALJ." *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005). The ALJ adequately considered the Plaintiff's subjective accounts of symptoms and physical limitations, and did so pursuant to the governing rulings and regulations, specifically Social Security Ruling 96-7p. The ALJ also provided adequate and specific reasons for discrediting Plaintiff's subjective accounts, relying on the medical evidence, Plaintiff's statements regarding daily activities, and Plaintiff's wife's statements regarding Plaintiff's daily activities. As the ALJ correctly applied the Social Security rules and regulations when determining the credibility of Plaintiff's subjective complaints of pain, and there is substantial evidence to support the ALJ's

credibility determination, the ALJ did not commit reversible error.[1]

## CONCLUSION

As the Commissioner's final decision in this matter is supported by substantial evidence and was reached through a proper application of the legal standards, it is the recommendation of the undersigned that the Commissioner's decision be **AFFIRMED** pursuant to Sentence Four of § 405(g). Pursuant to 28 U.S.C. § 636(b)(1), the parties may file written objections to this Recommendation with the Honorable Hugh Lawson, United States District Judge, WITHIN FOURTEEN (14) DAYS after being served with a copy of this Recommendation.

**SO RECOMMENDED** this 6th day of February, 2012.

s/ ***THOMAS Q. LANGSTAFF***

**UNITED STATES MAGISTRATE JUDGE**

llf

---

[1] Plaintiff also argues that the ALJ erred in Plaintiff's credibility determination because the ALJ placed "great weight" on the opinion of a non-examining state agency evaluator. The ALJ is not bound by the findings of the State agency evaluators, but "may not ignore these opinions and must explain the weight given to the opinions in their decisions." SSR 96-6p. In the decision, the ALJ discussed Plaintiff's medical record, Plaintiff's subjective complaints of pain, Plaintiff's wife's account of Plaintiff's injuries, and the other medical evidence. The ALJ then stated that he gave great weight to the opinion evidence of a State agency evaluator, who based her opinion on "the medical and other evidence of Record." (Tr. 17). After outlining his findings, the ALJ explained the weight given to the State agency evaluator, and thus, did not err.